ROUNDY and others, Respondents, vs. ERSPAMER, Appellant.

*November 5 — November 29, 1901.*

*Sales: Agency: Violation of instructions: Ratification.*

Defendant, the proprietor of a candy store, left the management of it to his eighteen-year-old son, but instructed him not to purchase goods of plaintiffs. Plaintiffs' agent, knowing of such instructions, secretly persuaded the son to purchase goods of them, and defendant from time to time saw that plaintiffs were shipping goods to him, but made no objection. *Held,* that he thereby ratified his son's acts.

APPEAL from a judgment of the circuit court for Iron county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action to recover $147.15 upon an account for goods alleged to have been sold by the plaintiffs' firm to the defendant between May 15 and December 27, 1899. The answer attempts to deny the sale of the goods alleged, and it was claimed upon the trial by the plaintiffs that the answer is insufficient to raise any issue, but, in the view

taken of the case by this court, it may be assumed that the denials were sufficient to put the plaintiffs to the proofs as to the sale and delivery of the goods. The answer also alleged, in substance, that in August, 1899, the defendant and the plaintiffs' agent, one O'Brien, adjusted all accounts between the parties, and that the defendant then paid the balance due from him to the plaintiffs, amounting to $75.27, and then closed all relations between himself and the plaintiffs, and has purchased no goods of the plaintiffs since that time; that, if the plaintiffs have delivered any goods at the defendant's place of business since that time, such delivery was without the defendant's knowledge and contrary to his direction; and that the defendant did not receive such goods, nor any benefit therefrom.

On the trial it appeared from the evidence that the defendant owned and operated a saloon in Hurley, Wisconsin, and a candy store in a separate building; that he personally conducted the business in the saloon; and that his son, Florian, eighteen years of age, managed the candy store under the defendant's direction. The defendant's testimony tended to show that he commenced to buy candy and chewing tobacco of the plaintiffs in May, 1899, and that he made purchases from time to time until August 17, 1899, when he paid the balance due, and told Mr. O'Brien, the plaintiffs' agent, that he would buy no more stuff of him; that he also told his son Florian, who was managing the candy store, to buy no more goods of O'Brien. The boy Florian testified that, after he was told by his father to buy no more goods of O'Brien, O'Brien came to the candy store frequently, and persuaded him to buy goods, telling him that he could keep the money separate and his father would know nothing about it, and that he did make such purchases, and kept the money separate from the other funds, and did not let his father know of the fact. It appears that in January, 1900, the boy ran away, and the candy business ceased.

All goods, whether for the saloon or the candy store, were shipped in the name of the defendant; the freight bills for the saloon goods being collected of the defendant at the saloon, and the freight bills for the candy store goods being collected at the candy store of the boy. There was really no dispute but that the goods claimed by the plaintiffs to have been delivered were in fact delivered at the candy store and used in the business.

At the opening of the defense, a motion was made by the plaintiffs to exclude all testimony under the answer on the ground that it did not state a defense. Upon this motion ruling was suspended, and evidence was taken subject to the objection. At the close of the trial the plaintiffs moved that the jury be instructed to render a verdict for the plaintiffs, which motion was granted by the court, and a verdict rendered, and the defendant appeals from judgment upon the verdict.

For the appellant there was a brief by *Julius J. Patek* and *Rufus B. Smith,* and oral argument by *Mr. Smith.*

For the respondents the cause was submitted on the brief of *P. G. Lennon* and *Geo. C. Foster.*

WINSLOW, J. We have found it unnecessary to consider the question whether the answer states any defense to the action. The testimony of the defendant was all taken, and is preserved in the bill of exceptions. Upon that testimony, we think the court was right in directing a verdict for the plaintiffs upon the merits. The defendant's testimony shows that he practically left the operation of the candy store in the hands of his son. He says: "The boy got all the bills. I let the boy get the mail. He read it, and answered it. When freight came for the candy store, I sent small boys for it. They took it to the candy store. When they opened the boxes, I went over and make a look. I saw *Roundy, Peckham & Co. were shipping goods all the time. I could*

*see that on the boxes.* I read my own name on the boxes, but
I never looked on the boxes." There is much other testi-
mony which shows beyond question that he left the candy
business in the hands of his son, both as to the receipt and
answering of letters, the handling of the money received,
the payment of freight bills, and the ordering of goods.
Perhaps the son's management was unwise and improvi-
dent, but that is not the question. When it appears that the
defendant knew that the plaintiffs were shipping goods to
the candy store all of the time, and made no objection, he
certainly must be held to have ratified the acts of the boy,
even if the purchases were originally made against his or-
ders. It is true that the defendant testifies that he cannot
read English, but he admits that he could read his own
name and the plaintiffs' name on the boxes.

*By the Court.*— Judgment affirmed.