HARTZHEIM, by Guardian *ad litem,* and another, Respondents, vs. SMITH and another, Appellants.

*April 17—May 20, 1941.*

For the appellants there was a brief by *Bradford & Derber* of Appleton, and oral argument by *A. S. Bradford.*

For the respondents there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *A. W. Parnell.*

WICKHEM, J. Plaintiff was three years old. Defendant was a school teacher who occupied the front two rooms of the home in which plaintiff lived. The house faced west on a public street. Along the south and east side of the house was a concrete sidewalk leading from the front walk to the rear door. Along the north side of the premises was a private driveway consisting of two graveled tracks running from a

garage thirty-eight feet to the north rear of the house, and thence one hundred feet six inches to the main sidewalk in front of the house. The garage was a two-car structure, and was not set exactly in line with the main part of the driveway, being a few feet to the south. Hence, in backing the car out of the north stall which defendant occupied it was necessary to angle slightly to the north until just past the rear of the house before the driveway straightened and paralleled the house. About 1 o'clock on the afternoon of April 30, 1940, when defendant came out of the front door of the house, plaintiff was on the public sidewalk wheeling her doll buggy. Defendant spoke to her and then walked around the south side of the house for the purpose of getting her automobile. Plaintiff's mother had a clothes line stretched in front of the garage, and defendant asked that it be removed and helped the child's mother to remove it. While they were talking the child came around the house and was told by her mother to come in the house to take her nap. The child replied that she wanted to get her buggy, and the mother then went in the house and the child walked around the south side of the house to get the buggy. Defendant testified that she did not see the child in the rear of the house. Defendant opened the door of the garage and got in her car. Before she got in she looked the length of the driveway and no one was in sight. She then backed her car out, focusing her attention to her left in order to come clear of the sides of the garage. Thereafter, she drove with both hands on the wheel looking out the left window. She cannot say that she used the rear-vision mirror at all. She backed out quite slowly and after going a distance of forty feet she heard a tinny sound and stopped. The child was lying near the south half of the driveway, about two thirds of the way back from the northwest corner of the house. It is not known where the child came from. It is contended that defendant could not see the portion of the south track where the child was whether she used the rear-

vision mirror, looked out the window on the left side or drove with the left door open, and these facts seem fairly well established. It is the contention of defendant that there is nothing that defendant could have done to avoid the accident; that if she got out and looked the child might have been in her path before she got back in her car; that she could not, by either of the above-described methods, see enough of the driveway to discover the child, and there was no other method of procedure open to her. No question is raised in the briefs as to what the duty of defendant was. The accident happened on private property, and it is conceded by plaintiff that defendant was not under a duty to keep a lookout unless she knew or in the exercise of ordinary care ought to have known that plaintiff or someone else was likely to be passing behind or in the vicinity of her car. *Czarnetzky v. Booth,* 210 Wis. 536, 246 N. W. 574; *Patterson v. Edgerton Sand & Gravel Co.* 227 Wis. 11, 277 N. W. 636. While the question is not without difficulty we conclude that there was a jury question here. Defendant knew that the child was playing in the front yard and that she was engaged in a type of play which involved movement from place to place. Whether defendant saw the child in the back yard is not important. If she did and the child was not in sight when she commenced to back up the car, a jury could conclude that that should have aroused defendant's concern as to her whereabouts. If she did not, the jury could reasonably conclude that a child wheeling a doll buggy and of the age of plaintiff might reasonably be expected to move into a position of danger before the backing operations could be completed and that her presence on the driveway was sufficiently likely to warrant effective steps to locate and warn her if she was not in view at the moment. It was pointed out in the *Edgerton Sand & Gravel Co. Case, supra,* that the duty of the operator of the vehicle extends to leaving the truck and walking to the rear to discover the location of persons whom he knew or had good

reason to believe might get back of the truck after he took his last observation.

It is further contended that the following instruction was error and prejudicial to appellant.

"The backing of any vehicle entails more or less limitation of the view of the driver of the area to be traversed, and thus requires a vigilant lookout on the driver's part to avoid causing injury to persons who are known to be or likely to be in the vicinity of the car that is being backed up.

"Now the defendant, Lois Smith, was chargeable with knowledge of the traits of a child of Barbara Jane Hartzheim's age, which would require increased vigilance as to lookout on her part if she knew, or in the exercise of ordinary care ought to have known, that Barbara Jane Hartzheim either was or was likely to be to the rear of the car."

The instruction was proper. . In the *Edgerton Sand & Gravel Co. Case, supra,* it was said (p. 18) :

"If Wescott knew or had good reason to believe that someone might get back of that truck after he took his last observation and before starting up, or if under all the circumstances he should have known or did know that someone might get back there then it was his duty to keep a close lookout, even to the point of its being necessary for him to get out of his truck, walk to the rear and find out. If, on the other hand, the foreman, Finley, assumed the responsibility of that lookout, and Wescott had the right to believe that the foreman, Finley, would look out and warn him if anybody got in the track why then the lookout on his part would be unnecessary."

It is contended that the jury's award to plaintiff was excessive. Plaintiff suffered numerous abrasions and contusions, as well as a broken leg. She was in the hospital seven weeks. The leg was four or five weeks in traction and from two to three weeks in a càst. Within nine and one-half weeks she was using the leg as freely as she ever did. She suffered somewhat more than the usual in a case of an ordinary frac-

ture because of abrasions upon her leg which in connection with the bandages used caused a great deal of discomfort. The pain subsided at the end of four or five weeks, and there is no evidence of the pain being unusual or extraordinary in nature. The only residual of the accident is that the leg which was broken was lengthened approximately one-half inch. This is corrected by using a slightly raised heel on the shoe of the other foot. Without this the child will limp slightly but in any event this will be corrected within a few years. The award of $2,000 is for pain and suffering up to the time of trial, and the award of $500 is for continuing injury. We are of the view that the award of $500 cannot be disturbed. However, the award of $2,000 for pain and suffering is plainly excessive. While other cases are not always persuasive on damages, several involving comparable injuries indicate that the award is clearly out of line. In *Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372, where a boy of thirteen sustained a duplicate backward dislocation of the elbow joint and a fracture of the humerus, this court set aside an award of $2,500 and fixed $1,500 as the maximum recovery.

In *Bratonja v. Wisconsin Ice & Coal Co.* 182 Wis. 206, 196 N. W. 244, a recovery of $3,500 was reduced to $1,500 for a transverse fracture of the ninth and tenth ribs, a longitudinal fracture of the eleventh, ten days' hospitalization, two months in bed, four months' disability from usual housework, permanent pain in the left side, nervousness, headaches, adhesion of the lung and pleura, and the persistence up to the time of the trial of a fever temperature.

In the case of *Prasch v. Prasch,* 200 Wis. 353, 228 N. W. 745, the injury was a laceration above the knee which severed the muscle attachments, required three stitches, and left a permanent scar. Plaintiff was unable to walk during the first month after the injury, another month the knee was bandaged and stiff. At the time of the trial the knee still would become

discolored, swollen, and painful upon exercising or in damp weather. An award of $3,500 was reduced to $650, which the court considered the lowest amount a fair-minded jury properly instructed would probably assess as her damages.

In *Collins v. Janesville,* 107 Wis. 436, 83 N. W. 695, and 111 Wis. 348, 87 N. W. 241, 87 N. W. 1087, verdicts of $2,500 and $2,800, respectively, were set aside as well as a reduction of the former verdict to $1,700 by the trial court where a girl thirteen years of age sustained a leg fracture which left her with a slight limp and occasional pain in the ankle joint in times of damp or rainy weather, together with other minor residuals such as chronic inflammation of the joint.

We think the award for pain and suffering is plainly excessive although not sufficiently so to indicate perversity of the verdict. It is our conclusion that there must be a new trial unless plaintiff Barbara Hartzheim, through her guardian plaintiff Wilfred Hartzheim, will consent to reduce the award for pain and suffering to $500 which we consider the lowest amount at which a fair-minded jury properly instructed would probably assess her damages. If within twenty days after notice of the *remittitur* of the record to the circuit court she will consent to reduce the jury's assessment for pain and suffering to that amount, she may take judgment accordingly on the verdict heretofore rendered; otherwise, defendant will be entitled to have the court grant his motion for a new trial because the jury's award of damages was excessive.

*By the Court.*—Judgment affirmed as to Wilfred Hartzheim suing in his own right. Judgment reversed as to Wilfred Hartzheim suing as guardian of Barbara Hartzheim, and cause remanded for further proceedings in accordance with this opinion. One bill of costs to be taxed.