Lisowski, by Guardian *ad litem,* and another, Respondents, v. Milwaukee Automobile Mutual Insurance Company and another, Appellants.*

*October 1—October 30, 1962.*

* Motion for rehearing denied, with $25 costs, on January 10, 1963.

500

For the appellants there was a brief by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *T. H. Skemp* and *William P. Skemp.*

For the respondents there was a brief by *Fugina, Kostner & Ward* of Arcadia, and oral argument by *LaVern G. Kostner.*

HALLOWS, J.   Several issues arise concerning the instructions given to the jury which the defendants argue were prejudicial "plaintiff instructions." The trial court instructed on a driver's duty when children are present, Form 1045, Wis. J I—Civil, Part I. Giving of this instruction was error. This is not a case in which the driver had actual notice

that children were playing in the area, as in *Hartzheim v. Smith* (1941), 238 Wis. 55, 298 N. W. 196, *Hanes v. Hermsen* (1931), 205 Wis. 16, 236 N. W. 646, and *Ruka v. Zierer* (1928), 195 Wis. 285, 218 N. W. 358. Nor were there any special facts which would make the presence of children likely, as when a motorist drives through a school area or near a park or playground. The duty of a motor vehicle driver approaching a place where children are playing or gathered is exhaustively annotated in 30 A. L. R. (2d) 1. The defendant Flury had no duty or reason to anticipate a child would walk or run in mid-block into the main business street of the town unless this court is to hold a driver of an automobile in a business district of a town is chargeable as a matter of law with notice that children are likely to come into his path. We will not so hold. Children of tender years are not likely to be unguarded or unaccompanied by adults in a business district and certainly ought not to be. Parents have a duty to watch and protect their children against traffic hazards when they accompany them in business districts of cities. Unless an autoist knows or some circumstances exist which warn or from which the motorist should know in advance that children are likely to be in the business district, an instruction such as was given in this case has no foundation. This view is supported by *Schneider v. Neuman* (1957), 2 Wis. (2d) 160, 85 N. W. (2d) 813, and *Hanson v. Weber* (1940), 234 Wis. 593, 291 N. W. 800 (cases of children running into a street in the business district). Merely being in a business district of a town does not constitute notice to a driver of an auto of the likelihood of children coming into the street in mid-block.

A judgment will not be reversed on the ground of misdirection of a jury unless this court is of the opinion after an examination of the entire record that the error has affected the substantial right of the party seeking the reversal.

Sec. 274.37, Stats. This is a test of probability, not possibility, requiring the entire evidence to show that had not the error occurred the result would probably have been different. *Carson v. Pape* (1961), 15 Wis. (2d) 300, 112 N. W. (2d) 693; *Holtz v. Fogarty* (1955), 270 Wis. 647, 72 N. W. (2d) 411; *Widness v. Central States Fire Ins. Co.* (1951), 259 Wis. 159, 47 N. W. (2d) 879; *Schwartz v. Eitel* (7th Cir. 1943), 132 Fed. (2d) 760. It does not appear from the record that had the instruction not been given a different result would or could have followed.

The defendants argue that without this instruction Flury was free from negligent lookout as a matter of law, urging this court to take judicial notice of the smallness in height of the five-year-old child, that he came from the right of the driver, and the traffic conditions required Flury to keep a vigilant lookout straight ahead. However, Flury testified on adverse examination he never saw the child until it was about to be hit in front of the car. At the trial, he varied this to some extent. Main street of Arcadia is 52 feet wide with the center line marked. Flury testified he was driving in the middle of his lane. The left side of his car was then approximately 10 feet north of the center line and the right side 10 feet from the north curb. Allowing six feet for cars parked along the curb, the right side of Flury's car was approximately four feet from these parked cars, and the child would have had to travel seven feet from the edge of the parked cars to the middle front of Flury's car. The shoe of the child which was found 16½ feet from the curb and which was testified marked the point of accident would sustain a reasonable inference the child was struck approximately 10 feet out from the parked cars and in the open street. The child's father, an eyewitness to the accident, stated the child walked out into the street. Flury claims he ran. This must be taken together with Flury's testimony that he did not see the child until he struck him. On the

facts, the jury could not have found otherwise than that Flury was negligent as to lookout. We cannot hold a driver in traffic in a business district fulfils his duty of lookout by only looking ahead. *Schneider v. Neuman, supra.* How far under such circumstances the driver must keep a lookout to the side is a question of fact but is not applicable here. If Flury had kept a proper lookout he would have seen the child sooner than he did with only a slight deviation from looking straight ahead. Consequently, the jury's verdict on lookout would be the same whether the instruction had been given or not. Since a child five years old is incapable of negligence (sec. 328.44, Stats.), this is no question of the effect of the erroneous instruction on apportionment of negligence.

In the instructions, the court included the following:

"It appears that the defendant, Gail Flury, is crippled because of the effects of polio. The extent or degree of his disability is for you to determine from the evidence. A person who is physically handicapped has the same right to use as others the streets and sidewalks and he is governed by the same standard of care for his own safety and safety of others as that which governs normal persons, that is, ordinary care. But in order to measure up to that standard of care, he must more vigilantly exercise caution through other senses and other means in order to compensate for his physical handicap. Due consideration should be given to defendant Gail Flury's physical handicap and to the fact that it was his duty to exercise a greater degree of care, proportioned to the degree of his physical impairment, in looking for approaching pedestrians and in operating his motor vehicle than would have been required had he been a physically normal person."

This was adapted by the trial court from suggested Form 1050, Wis. J I—Civil, Part I, which in form applied to defective hearing or eyesight as affecting lookout. The instruction as given covered a physical handicap and included

the element of management and control as well as lookout. An instruction on the duty of handicapped persons need not be restricted to sensory handicap. Before instruction on the duty of a handicapped person should be given, there must be a foundation in the evidence for a jury finding that there is some element of negligence to which the handicap relates. Without such a requirement, it would be proper to give such an instruction in almost every case. The mere fact a person is physically handicapped does not justify giving such an instruction. The question of management and control was submitted to the jury by the trial court on the basis the instruction should be given because to the court it appeared Flury was crippled and had underestimated in his testimony the effects polio had on him. If Flury's operation of the car raised an issue of management and control, which in our opinion it did not, the apparent fact concerning his physical condition would have been sufficient to justify the giving of the instruction. The defendant did not see the child until he was immediately in front of the car and about to be struck. Nothing the defendant could have done at that point would have avoided the collision. Flury was found not guilty of speed and testified he put on his power brakes as soon as he saw the child in front of his car. It was error to give the instruction.

Assuming this a proper case for the giving of the instruction, we find its language objectionable. The instruction states in order to measure up to the standard of ordinary care a handicapped person must "more vigilantly exercise caution" through other senses and other means to compensate for his physical handicap. The phrase "more vigilantly exercise caution" implies a greater degree of care is required. A person afflicted with a physical disability must put forth greater effort in order to attain the standard of ordinary care, but this should not be characterized as caution. The words "other senses" imply Flury was handi-

capped in one of his five senses which is not sustained by any evidence. The instruction also included the phrase it was the handicapped person's duty to exercise "a greater degree of care, proportioned to the degree of his physical impairment." The use of the phrase "greater degree of care" is confusing in reference to the ordinary standard of care and would lead the average jury to believe a handicapped person has to exercise a greater degree of care than ordinary care. True, a handicapped person must do more to exercise ordinary care than would be required if he were not handicapped, but the greater effort to compensate for his handicap should not be characterized as an exercise of a greater degree of care. See 2 Harper and James, Law of Torts, p. 920, sec. 16.7; 38 Am. Jur., Negligence, p. 895, sec. 210.

An inference of negligence does not arise from the existence of a physical handicap nor does its existence justify the giving of the instruction. A physical handicap may in a case have no bearing or relationship to negligence, but under different facts the handicap and the person's efforts to compensate therefor would be material in determining whether the handicapped person met the standard of ordinary care. The error in giving this instruction was not prejudicial because it went primarily to management and control, an issue that should not have been submitted to the jury with or without the instruction. Since the judgment of the trial court can be sustained on the issue of lookout alone, a reversal is not required.

The trial court refused to give instructions on the defendant's right-of-way as against a pedestrian crossing a public street in the middle of the block and on the right of the defendant to assume the exercise of due care by a pedestrian. The latter instruction, while proper if this case involved an adult, was improper as applied to this child who by the grace of statute was not negligent. The instruction

referred to the child's wrongful conduct and, therefore, was erroneous. The court correctly rejected the instruction. Sec. 270.21, Stats.

In *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 66 N. W. (2d) 169, we said, in a case involving a four-years and eight-months-old child running across the street in mid-block, that an instruction on the motorist's right-of-way and an emergency instruction were proper in respect to management and control. Here, the issue is whether it is error not to give the right-of-way instruction. Defendants had the benefit of the emergency instruction. The motorist has a right to some reliance on the fact he has a right-of-way and pedestrians will observe their statutory duty to yield. *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123; *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205. When one having the right-of-way sees a pedestrian or another car, he may assume the pedestrian or car will observe his right-of-way but if the pedestrian or car does not yield the right-of-way he is under a duty to manage and control his car so as to attempt to avoid the accident. But such a reliance affects primarily management and control or speed and does not affect one's duty to maintain a proper lookout. *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163; *Oelke v. Earle* (1956), 271 Wis. 479, 74 N. W. (2d) 336; *Whyte v. Lindblom* (1934), 216 Wis. 21, 255 N. W. 265, 256 N. W. 244. This reliance has no basis in fact when an autoist sees a child who cannot be held guilty of negligence for failing to yield the right-of-way. Here, Flury did not see the child at all before it was too late. Failure to give the instruction on right-of-way was, therefore, not error. The defendants requested an instruction that the child's conduct was the sole and intervening cause of the accident even though the child was not negligent. There is little

merit in this argument. What would have been causal negligence and a contributing cause if the plaintiff were an adult does not become an intervening cause because the child's act does not constitute negligence. The defendants' argument ignores Flury was negligent in his lookout and such negligence was causal.

We cannot agree the jury was prejudiced on either the liability or the damage questions. In spite of the erroneous instructions and eliminating the issue of management and control, the jury would have had to find Flury was causally negligent as to lookout. The evidence on damages presented a jury question and while the trial court thought the damages were high by $1,000, they were not excessive. The plaintiff James Lisowski sustained a fracture of the left femur which has now healed but resulted in a slight angulation and a permanent shortening of the leg by one-half inch. He received cuts on his head and mouth and has a permanent scar on his lip. He suffered a painful infection of the ankle for several months, requiring approximately 25 trips for medical care.

In a case where negligence of the plaintiff and defendant must be compared, the errors committed in this case would require a new trial. No such problem is presented here and although there are several errors, their cumulative effect does not destroy the causal negligence as to lookout. If the trial court had found Flury negligent as to lookout as a matter of law, we would not have considered that error. This view precludes the exercise by this court of its discretionary power of reversal and granting a new trial.

*By the Court.*—Judgment affirmed.