EDWARD H. PATTERSON AND BARBARA MORLEY, HUSBAND AND WIFE, AND AMERICAN CENTRAL CITY, INC., APPELLANTS, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

550 N.W.2d 650

Filed June 28, 1996.   No. S-94-697.

R. Kent Radke for appellants.

William F. Austin, Lincoln City Attorney, and Dana W. Roper for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

The City of Lincoln, appellee, separately condemned two pieces of land owned by appellant American Central City, Inc., a Nebraska corporation. Appellant Barbara Morley is the wife of appellant Edward H. Patterson, who is president and sole stockholder of American Central City (hereafter all appellants will be referred to as "Patterson"). The court appointed two sets of appraisers, who awarded $569,812.36 and $25,952.52 for the two pieces of land. The parties appealed, and the cases were consolidated for trial. A jury trial was held, and the jury returned a verdict in favor of Patterson in the amount of

$424,270. Patterson appealed, assigning as error (1) that the verdict was not supported by the evidence, (2) that the court erred by excluding valuation determined by an "income or development cost approach" based on anticipated income from apartments Patterson expected to build on the land, and (3) that the court erred by allowing testimony by the city's witnesses which was not the proper measure of damages. We removed the case from the Court of Appeals' docket pursuant to our power to regulate the caseloads of lower courts. We affirm.

## BACKGROUND

The City of Lincoln, under eminent domain, condemned Patterson's land on the stipulated date of May 25, 1990. The land was by resolution labeled as being blighted. Patterson acquired the land over a period of 18 years. At the time of taking, the land was zoned R-6, allowing a maximum of 218 apartment units on the property, but it was not developed.

At trial, several appraisers testified as to the value of the property. All testified that the highest and best use of the land at the date of taking would be to build apartment complexes on it.

Edward Patterson testified that the fair market value of the land was $2,180,000. In an offer of proof, after the city objected, Edward Patterson stated that his opinion of value based on the income or development cost valuation would be $4,470,330. The objections before and after the offer of proof were sustained.

Patterson's first expert stated that the fair market value of the land, using the comparable sales approach, was $872,000. He used 10 sales from 1987 to 1990. Patterson's second expert also stated that the fair market value was $872,000. He used Patterson's first expert's report. Neither expert was allowed, after objection, to testify as to the income or development cost valuation, that is, the value based on the income from apartments which Patterson expected to build on the land.

The city's first expert stated that the fair market value of the land, using the comparable sales approach, was $381,500. He used 21 sales from 1981 to 1990. He adjusted for the differ-

ences between the comparable properties and the condemned property and also adjusted for differences between market conditions at the time of the comparable sales and those existing at the time of the condemnation. Prior to this opinion, during a foundational examination, Patterson stated: "Your Honor, I would object to the witness giving testimony of value based on the fact he is not using the proper measure of damages." The objection was overruled. When this opinion was actually stated, Patterson raised no objection.

The city's second expert stated that the fair market value of the land, using the comparable sales approach, was $325,000. He used approximately 20 sales from various dates. He adjusted each comparable sale to minimize the differences between it and the condemned property. He explained each adjustment. He also, where he thought it appropriate, adjusted each comparable sale price to simulate the market conditions at the time of the condemnation of Patterson's property. These adjustments were explained. Patterson objected to this expert's valuation opinion, stating: "Your Honor, I object. Expressing an opinion based on the fact, that's using improper measure of damages." The objection was overruled. Both of the city's experts stated that the income or development cost valuation was improper when no structure existed on the premises.

## ASSIGNMENTS OF ERROR

Patterson assigns as error:

1. That the verdict of the jury is contrary to law and not supported by the evidence in that the jury failed to find that the fair market value of the land taken by condemnation at time of taking was not [sic] in excess of Four Hundred Twenty-four Thousand Two Hundred Seventy Dollars ($424,270.00).

2. That the Court erred by not allowing Appellant to present expert testimony and evidence as to the fair market value of the subject property as of the date of taking, based upon an income and development cost approach to valuation.

3. That the Court erred by allowing testimony, duly objected to by the Appellant, in so far as the expert tes-

timony of the Defendant's witnesses, Frank Frost and Matthew J. Wilson, regarding evidence of fair market value of the subject property as of the date of the taking, in that the testimony of said expert witnesses was not the proper measure of damages.

## STANDARD OF REVIEW

A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996); *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995); *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995).

In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Solar Motors, supra*; *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995); *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994).

Where the evidence is conflicting, an appellate court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. *Roberts, supra*; *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994).

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Solar Motors, supra*; *Winslow v. Hammer*, 247 Neb. 418, 527 N.W.2d 631 (1995); *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994).

## ANALYSIS

The expert witnesses for both the city and Patterson used the comparable sales approach to estimate the fair market value of the condemned land. Patterson then attempted to use the income or development cost approach. This would base the value of the land on anticipated income from apartments expected to be built on the land. Patterson argues that such an

approach was approved in *Iske v. Metropolitan Utilities Dist.*, 183 Neb. 34, 157 N.W.2d 887 (1968).

In *Iske v. Metropolitan Utilities Dist.*, the condemned land had a gravel deposit and was subject to a lease to remove and sell the gravel. The parties stipulated that there were no comparable sales for this land. That being true, the trial court allowed the plaintiff's expert in the action to testify as to the income which would be produced from the removal of the gravel and the recreational use of the lake which the removal would create. This court affirmed the use of the "income approach" in that situation.

The case of *Iske v. Metropolitan Utilities Dist.* was followed 2 years later by the case of *Iske v. Omaha Public Power Dist.*, 185 Neb. 724, 178 N.W.2d 633 (1970). This court allowed the use of the income approach in that case involving almost identical land. Again, the parties conceded that no comparable sales existed. The income approach, determining valuation from recreational use of the land, in both of the *Iske* cases was possible because the value derived from the "intrinsic nature" of the land.

This case is different from both of the *Iske* cases. Here, comparable sales were not only available, but Patterson's experts relied on comparable sales for their own valuations. Further, Patterson failed to prove that the land had any intrinsic value, such as recreational use, as compared to the land in either of the *Iske* cases. We find the exclusion was proper.

Patterson further assigns as error failure to exclude the testimony of the city's experts using the comparable sales approach. Both sides' expert witnesses used the comparable sales valuation approach.

We have stated that in eminent domain proceedings, where the sales prices of other tracts are offered as evidence of market value of the tract taken, a wide discretion must be granted the trial judge in determining the admissibility of the evidence of the other sales. The evidence should not be admitted where there is a marked difference in the situations of the properties. *McArthur v. Papio-Missouri River NRD, ante* p. 96, 547 N.W.2d 716 (1996); *Thacker v. State*, 193 Neb. 817, 229 N.W.2d 197 (1975). Whether the properties the subject of

other sales are sufficiently similar to the property condemned to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the discretion of the trial court, which will not be interfered with unless abused. The exact limits, either of similarity or difference, or of nearness or remoteness in point of time, depend upon the location and character of the properties and the circumstances of the case. *Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982).

Generally, evidence as to the sale of comparable property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. *McArthur, supra*; *Wear v. State of Nebraska*, 215 Neb. 69, 337 N.W.2d 708 (1983).

The testimony of the city's experts met those criteria. It cannot be said that the trial court abused its discretion in allowing the city's witnesses, after satisfying foundation, to testify to comparable sales. Therefore, we find the objections to the city's experts' opinions are without merit.

Regarding whether the verdict was sustained by the evidence, an expert witness, when properly qualified, may testify as to the valuation of the property, and the weight and credibility of what the witness considers in coming to his conclusion is for the jury to determine. *Iske v. Omaha Public Power Dist., supra*; *Iske v. Metropolitan Utilities Dist., supra*.

The jury verdict fell in between the two conflicting sets of expert testimony. The expert witness testimony is not binding on the triers of fact. The amount of damages sustained is peculiarly of a local nature and ordinarily is to be determined by the jury, and this court will not ordinarily interfere with the verdict if it was based upon admissible testimony. When the evidence is conflicting, the verdict of the jury will not be set aside unless it is clearly wrong. *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994).

We note that the jury had an opportunity to view the property.

From our review of the record, we conclude that the evidence presented a question for the jury and that it is sufficient to sustain the verdict, which is not clearly wrong.

## CONCLUSION

Finding that the court did not err in excluding the income or development cost valuation and that sufficient evidence exists to support the jury's verdict, we affirm.

AFFIRMED.