CONNIE L. LAHM, APPELLANT, V. BURLINGTON NORTHERN RAILROAD COMPANY, A CORPORATION, APPELLEE.

571 N.W. 2d 126

Filed November 25, 1997.    No. A-95-1267.

C. Marshall Friedman, P.C., Kenneth E. Rudd, Daniel J. Cohen, Bret E. Taylor, and John J. Higgins, for appellant.

Samantha B. Trimble, and, on brief, Terry C. Dougherty, of Knudsen, Berkheimer, Richardson, Endacott & Routh, for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Connie L. Lahm brought this action seeking recovery for personal injuries allegedly caused by her employment with the Burlington Northern Railroad Company (BNRR), pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1994). At trial, a jury returned a general verdict for BNRR, and Lahm brings this appeal. On appeal, Lahm challenges various rulings made by the trial court, as well as the jury instructions submitted by the court. Because we find that the jury could reasonably have concluded from the evidence presented that Lahm's action was barred by the statute of limitations, we affirm.

## II. BACKGROUND

During the late 1970's, Lahm was employed as a "carman" for BNRR. In November 1981, she was placed on furlough. In October 1987, Lahm received a recall notice from BNRR offering her the opportunity to return to work effective November 9, 1987. Lahm was initially assigned to a location known as Building 33 to complete an apprenticeship. In Building 33, Lahm engaged in welding, cutting with a torch, and grinding. The apprenticeship lasted until February 1988. Lahm spent sev-

eral days doing airbrake work, also in Building 33, before receiving her carman "card" on February 8, 1988.

After becoming "carded," Lahm was assigned to a location known as "three line" to do welding work on railroad cars. Among her job duties was extensive welding and patching work. Additionally, Lahm did some grinding work in conjunction with her welding duties.

On approximately February 17, 1988, Lahm visited her family doctor, complaining of pain in her fingers, stinging and numbness in her hands and arms, and difficulty sleeping. Lahm's family doctor referred her to a specialist, a neurologist named "Dr. Richard C. Sposato," within approximately 1 to 2 weeks of her initial visit. Sposato diagnosed Lahm as suffering from bilateral carpal tunnel syndrome, worse on her right side. On March 23, surgery was performed on Lahm's right wrist.

Lahm returned to light duty at BNRR, which still included welding responsibilities. On March 29, 1988, Lahm completed a personal injury report for BNRR, with the assistance of Marshall Tracy. Tracy actually filled out the report, under Lahm's direction, because Lahm's right wrist was still in a cast. On the personal injury report, in response to the "Date of Incident" inquiry, Lahm responded "on or about Jan[uary] 15." The report also indicated that Lahm's "Seniority Date" was "1-8-88," instead of the correct date of February 8. Tracy signed Lahm's name to the form, with Lahm's permission, and Lahm initialed the form, indicating "Permission Given to Marshall Tracy to fill out this form . . . by Connie."

Lahm was eventually relocated at BNRR to a location known as the "truck station." At the truck station, Lahm operated a piece of machinery known as a hydraulic "gagger," which Lahm contends that she and her coworkers found never worked properly. In order to complete the job, Lahm often was required to strike the gagger repeatedly with a sledge hammer. Lahm continued working in the truck station for an extended period of time, until approximately November 1990.

In December 1988, Lahm had surgery on her left wrist. In May 1989, she began experiencing pain in the palm and fingers of her right hand, and her doctors concluded that she was suffering from a trauma known as tendosynovitis in her trigger fin-

ger. In October 1989, surgery was completed to relieve pressure in her wrist associated with the tendosynovitis.

On approximately October 23, 1990, Lahm was using a hammer when a fragment broke off of a block she was striking and struck her in the head. After the fragment was removed, Lahm returned to light duty at BNRR until she was removed from service on March 1, 1991. On July 3, 1991, she underwent another surgery on her right hand and wrist.

Lahm brought suit against BNRR in the Circuit Court of Jackson County, Missouri, on February 8, 1991. In her petition filed in the district court for Douglas County, Nebraska, on July 27, 1992, Lahm alleges two counts: first, that she suffered from carpal tunnel syndrome which was caused or contributed to by her employment with BNRR; and second, that she suffered injuries when struck in the head by the block fragment. The only issues raised on this appeal concern the first count of Lahm's complaint, namely, the carpal tunnel syndrome allegations. We note that the parties have agreed in their pleadings that the lawsuit was commenced, for statute of limitations purposes, on February 8, 1991.

At trial, Lahm testified that she began developing symptoms of carpal tunnel syndrome after becoming carded and being assigned to three line, sometime after February 8, 1988. However, during cross-examination, BNRR elicited testimony from Lahm that indicated she began developing symptoms of carpal tunnel syndrome during her apprenticeship; specifically, that the symptoms began in January 1988 and that she was immediately aware that the symptoms were caused or contributed to by her employment. In addition, BNRR asserted in its answer that Lahm's suit was barred by the statute of limitations. BNRR further asserted that there was no negligence on its part and that Lahm's alleged injuries were caused solely by nonemployment factors.

During the jury instruction conference, BNRR sought a special verdict form which would require the jury to specifically answer, inter alia, whether the action was brought within the statute of limitations, whether BNRR was negligent, whether Lahm had proved causation, what the extent of the money damages would be, and whether the damages should be reduced

because of a preexisting condition or failure to mitigate. Lahm strongly resisted the giving of a special verdict form, alleging that BNRR was attempting to place an undue emphasis on one part of Lahm's case, thereby causing the jury to focus unduly on the statute of limitations question. The court refused to give the special verdict form. The jury returned a general verdict in favor of BNRR. Lahm brings this timely appeal.

## III. ASSIGNMENTS OF ERROR

On appeal, Lahm assigns various errors concerning rulings made by the trial court during the course of the trial, as well as the jury instructions given by the trial court. One of the issues Lahm raises on appeal is whether or not the trial court should have allowed the issue of the statute of limitations to go to the jury or whether the court should have granted Lahm a directed verdict on the issue. Because we conclude that the court properly overruled Lahm's motion for directed verdict on the statute of limitations issue and that the jury could reasonably have concluded that Lahm's claim was barred by the statute of limitations, we need not specifically address any of Lahm's other assigned errors.

## IV. ANALYSIS

### 1. STATUTE OF LIMITATIONS

FELA provides that no action for recovery of damages may be maintained pursuant to FELA unless commenced within 3 years from the date the cause of action accrues. See 45 U.S.C. § 56. In FELA actions, the "discovery" rule applies in determining when a cause of action accrues for purposes of the statute of limitations. See, e.g., *Monaghan v. Union Pacific RR. Co.*, 242 Neb. 720, 496 N.W.2d 895 (1993). As such, a cause of action accrues for purposes of the statute of limitations when a reasonable person knows, or in the course of exercising reasonable diligence should have known, of both the injury and its governing cause. *Id.* Both of these requirements, knowledge of the injury and knowledge of its governing cause, require an objective inquiry into when the plaintiff knew or should have known the essential facts of the injury and its cause. *Id.* Concerning traumatic injuries, the Nebraska Supreme Court noted that when the symptoms are immediately manifested so

that the employee is aware of the event causing the injury, the cause of action is deemed to have accrued upon the occurrence of the injury, regardless of whether the full extent of the disability is known at that time. *Id.*

The determination of whether acts of alleged negligence occurred within the period of limitations is a task for the trier of fact. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996). Additionally, the point in time at which a statute of limitations begins to run must be determined from the facts of each case. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996). As such, the issue of when Lahm's cause of action accrued, pursuant to the discovery rule, was a question of fact for the jury to decide.

### 2. DIRECTED VERDICT

Lahm moved the trial court for a directed verdict on the issue of the statute of limitations. Lahm asserted that the evidence established that she did not reasonably discover her injuries and their cause until sometime after February 8, 1988, and that the cause of action was brought within 3 years thereof. The trial court overruled her motion and submitted the issue to the jury for determination. As the Nebraska Supreme Court has noted, a directed verdict is appropriate only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

In the present case, Lahm testified that she had no numbness, tingling, or pain in either wrist during the time she was completing her apprenticeship. She testified that she began suffering symptoms within approximately 1 week after receiving her card and becoming a carman on three line, which occurred on February 8, 1988. Lahm also offered testimony from her apprenticeship supervisor, who confirmed that she did not complain to him of any symptoms while she was completing her apprenticeship.

BNRR disputed Lahm's claim of when her symptoms began by pointing to two primary pieces of evidence. First, BNRR relied upon the personal injury report completed under Lahm's

direction on March 29, 1988. In the personal injury report, Lahm indicated that the "[d]ate of [i]ncident" was "on or about *Jan[uary]* *15[, 1988]*." (Emphasis supplied.) Lahm argued at trial that the date was simply an error, and pointed out that her seniority date as listed on the personal injury report was off by 1 month, because the form indicated her seniority date was "1-8-88" instead of February 8, when she actually received her card. Lahm acknowledged, however, that she provided the information on the report and that she read the form after it was completed and initialed and dated the form.

Second, BNRR relied upon a transcription of a tape-recorded statement made by Lahm to a claims manager, Pat Heather, on November 3, 1989. During the interview, Heather asked Lahm at what particular location she had been working "[a]t the time of the accident," and Lahm responded, "I was still an apprentice in Building [3]3." Heather also asked Lahm if "the first time [Lahm] really notice[d] [the problem] was in January of [19]88," to which Lahm responded, "[y]es." Heather offered Lahm an opportunity to review the tape in its entirety and to add, correct, or take out anything that she had said, and Lahm declined to do so. Lahm also attested that everything said was true and correct to the best of her knowledge.

It is apparent that the personal injury report and the transcribed conversation provided the jury with some evidence to suggest that Lahm began developing symptoms in January 1988, not February 1988. Additionally, Lahm acknowledged during cross-examination that there had been no other significant changes in her life prior to the onset of the symptoms, except for her return to BNRR, and that the presence of the symptoms was enough to lead her to believe that the problem was job related. From this evidence, we conclude that reasonable minds could differ as to when the symptoms began and, accordingly, when Lahm's cause of action accrued. As such, the trial court was correct in denying Lahm's motion for directed verdict.

### 3. GENERAL VERDICT

We are compelled to note the difficulties presented in this case because of the general verdict form. Because the jury was instructed about the statute of limitations issue as well as the

merits of the case, but was not given special interrogatories to answer, the fact that the jury returned a verdict in favor of BNRR does not provide us with any insight as to whether the jury found that the claim was barred by the statute of limitations or whether the jury found that the claim was not barred, but nonetheless found for BNRR on the merits of the case. The difficulties presented by such a situation are compounded in the present case because BNRR requested and argued in favor of a special verdict form, specifically arguing that a special verdict form should be utilized in this case so that if the jury did find for BNRR, the parties as well as this court would be able to determine upon which issue the jury found for BNRR. Despite BNRR's request, Lahm adamantly and strenuously argued against the giving of special interrogatories. As a result, we are left with a general verdict in favor of BNRR, without guidance as to the basis of that verdict.

Assuming, without expressly deciding, that Lahm is correct in asserting that the trial court committed errors in the jury instructions concerning the merits of this case, then the question presented on this appeal becomes whether the general verdict returned by the jury can stand where one issue, namely, the statute of limitations rule, was submitted to the jury without error, while another issue, namely, the merits of Lahm's FELA claim, may have been submitted upon erroneous instructions. Our review of Nebraska law has revealed no cases which deal with this specific issue.

In cases such as this, other jurisdictions have recognized and followed a rule known as the "general verdict" rule or the "two issue" rule. The general verdict rule provides that where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented to the jury free from error, any error in presenting another issue will be disregarded. *Fulwiler v. Schneider*, 104 Ohio App. 3d 398, 662 N.E.2d 82 (1995). See, also, *Sheridan v. Desmond*, 45 Conn. App. 686, 697 A.2d 1162 (1997); *Jack Rabbit Lines v. Neoplan Coach Sales*, 551 N.W.2d 18 (S.D.

1996); *Barhoush v. Louis By and Through Julien*, 452 So. 2d 1075 (Fla. App. 1984); *Everett v. Everett*, 150 Cal. App. 3d 1053, 201 Cal. Rptr. 351 (1984); *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983); *Chambers v. Holland*, 524 S.W.2d 941 (Tenn. App. 1975); *Lisowski v. Milwaukee Automobile Mut. Ins. Co.*, 17 Wis. 2d 499, 117 N.W.2d 666 (1962).

The rule is considered to be a policy rule, designed to simplify the work of trial courts and to limit the range of error in proceedings brought before appellate courts. *Orr v. Crowder, supra.* In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially *did not* depend upon the trial errors claimed by the appellant. *Sheridan v. Desmond, supra.* On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. *Id.* Therefore, unless an appellant can provide a record to indicate that the result of the trial was a result of the trial errors claimed on appeal, rather than from proper determination of the error-free issues, there is no reason to spend the judicial resources to provide a second trial. See *id.*

The general verdict rule has been adopted and applied in the states of Alabama, Arizona, California, Connecticut, Florida, Illinois, Ohio, South Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin to avoid reversing or remanding cases for a new trial where at least one determinative issue was properly submitted and could have supported the general verdict. See, *Automotive Acceptance Corporation v. Powell*, 45 Ala. App. 596, 234 So. 2d 593 (1970); *Reese v. Cradit*, 12 Ariz. App. 233, 469 P.2d 467 (1970); *Everett v. Everett, supra*; *Sheridan v. Desmond, supra*; *Rogers v. Northeast Utilities*, 45 Conn. App. 23, 692 A.2d 1301 (1997); *Small v. Stop and Shop Companies, Inc.*, 42 Conn. App. 660, 680 A.2d 344 (1996); *Munson v. United Technologies Corporation*, 28 Conn. App. 184, 609 A.2d 1066 (1992); *Barhoush v. Louis By and Through Julien, supra*; *Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 263 N.E.2d 103 (1970); *Fulwiler v. Schneider, supra*; *Bowman v. Davis*, 48 Ohio St. 2d 41, 356 N.E.2d 496 (1976); *Anderson v. West*, 270 S.C. 184, 241 S.E.2d 551 (1978); *Jack Rabbit Lines v. Neoplan Coach Sales,*

*supra*; *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732 (S.D. 1990); *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120 (S.D. 1977); *Limmer v. Westegaard*, 251 N.W.2d 676 (S.D. 1977); *Chambers v. Holland, supra*; *Orr v. Crowder, supra*; *Lisowski v. Milwaukee Automobile Mut. Ins. Co., supra.* Contra, *Ga. Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442 (1978); *Martin v. Northern Pacific Ry. Co.*, 51 Mont. 31, 149 P. 89 (1915); *Heinen v. Heinen*, 64 Nev. 527, 186 P.2d 770 (1947); *Maccia v. Tynes*, 39 N.J. Super. 1, 120 A.2d 263 (1956); *Salinas v. John Deere Co., Inc.*; 103 N.M. 336, 707 P.2d 27 (1984); *Hamilton v. Presbyterian Hosp. of City of N. Y.*, 25 A.D.2d 431, 267 N.Y.S.2d 656 (1966); *Bredouw v. Jones*, 431 P.2d 413 (Okla. 1966); *Norfolk & W. Ry. Co. v. Mace*, 151 Va. 458, 145 S.E. 362 (1928).

█ The Nebraska Supreme Court has repeatedly held that a jury verdict will not be set aside unless clearly wrong and that it is sufficient if *any competent evidence is presented to the jury upon which it could find for the successful party. World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996); *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996); *Patterson v. City of Lincoln*, 250 Neb. 382, 550 N.W.2d 650 (1996); *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). See, also, *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983), *overruled on other grounds by Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987) (in bench trial, trial court's judgments are to be affirmed if evidence sustains any theory of recovery pled by plaintiff, irrespective of theory relied on by trial court). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence in the light most favorable to the successful party and resolves any evidentiary conflicts in favor of such party, who is entitled to the benefit of every reasonable inference deducible from the evidence. *Patterson v. City of Lincoln, supra*; *Solar Motors v. First Nat. Bank of Chadron, supra.*

As noted above, BNRR provided sufficient evidence from which the jury could reasonably have concluded that Lahm began experiencing symptoms and was aware the symptoms were job related in January 1988. This conclusion would have

dictated a finding by the jury that Lahm did not bring her cause of action within the statute of limitations, because she did not bring the cause of action until February 8, 1991. On the unique facts of this case, where BNRR specifically sought a special verdict form, but Lahm adamantly resisted such a special verdict form, we feel it is appropriate to apply the general verdict rule as set out above. Because the statute of limitations issue was properly submitted to the jury free from error, and because there was sufficient evidence to support a finding in favor of BNRR on that determinative issue, we cannot say that the verdict is clearly wrong.

Lahm's remaining assignments of error concern rulings which go to the merits of her FELA claim. Because of our application of the general verdict rule, we need not reach the merits of these claims. The judgment of the district court is affirmed.

AFFIRMED.

HANNON, Judge, concurring.

I write separately to concur with the majority's opinion because it seems to me the opinion implies that the "general verdict" rule, or the "two issue" rule, is the law of the State of Nebraska. I do not believe it is or that it should be. However, in view of the fact that Lahm successfully resisted BNRR's request for a special verdict form on the statute of limitations issue, I do not believe Lahm should now be able to take advantage of the confusion that her own actions created, particularly in view of the fact that the statute of limitations issue is a completely separate issue which should have been submitted under a separate verdict. Therefore, I concur.