**Lee VANACORE, Plaintiff,**

v.

**E. Stanton KENNEDY,
et al., Defendants.**

**Civil Action No. 396CV891(JCH).**

United States District Court,
D. Connecticut.

Sept. 18, 1998.

James C. Riley, James A. Fulton, Whitman, Breed, Abbott & Morgan, Greenwich, CT, for Lee L. Vanacore.

Maria S. Spalding, Christopher Brigham, Mary Catherine Healy, Updike, Kelly & Spellacy, P.C., New Haven, CT, Christopher J. Devine, The Hartford, Southern Division Al/GL, Consultant, Hartford, CT, for Frederick F. Ehrsam, Jr., Ehrsam & Kennedy.

Nicholas E. Wocl, Brenden P. Leydon, Tooher & Wocl, Stamford, CT, for John D. Lium, Space Realty, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HALL, District Judge.

## I. BACKGROUND

At the outset, the court notes what this case makes all too transparent: that the wreckage created by one lawyer's unconscionable abuse of trust and pervasive dishonesty is not easily or finally cleared away.

On May 17, 1996, plaintiff Lee Vanacore filed this action against his former attorney, E. Stanton Kennedy, for theft and fraud in connection with Kennedy's acceptance of a buy-out of a note held by Vanacore and the subsequent release of a mortgage which secured the note. On October 2, 1996, this action was dismissed as to Kennedy by reason of an involuntary bankruptcy petition filed against him.[1]

---

1. On October 2, 1996, the court (Arterton, J.) dismissed this action "[i]n consideration of

In the same action, the plaintiff also sues the law partnership of Ehrsam and Kennedy ("E & K") and Kennedy's law partner Frederick Ehrsam, Jr., for legal malpractice, breach of fiduciary duty, and related state law violations. He also sues the mortgagors, John Lium and Space Realty, Inc., for reinstatement of the mortgage on the basis of unjust enrichment.

Lium and Space Realty have cross-claimed against E & K and Frederick Ehrsam, alleging that they are liable for Kennedy's misrepresentations about the release and discharge of the mortgage and that they were negligent in supervising Kennedy and E & K's account. Lium and Space Realty have counter-claimed against the plaintiff for detrimental reliance on Kennedy's representations. Ehrsam and E & K have asserted a cross-claim against Lium and Space Realty for unjust enrichment.

After consideration of the documentary evidence and testimony presented during a five-day trial, the court makes the following findings of facts and conclusions of law.

## II. FINDINGS OF FACT

### A. The Parties

1. Plaintiff Lee Vanacore is a citizen of the State of Florida.

2. Defendant E. Stanton Kennedy, an attorney duly licensed to practice law in the State of Connecticut during all times relevant to this suit, is a citizen of the State of Connecticut.

3. Defendant Frederick Ehrsam is also licensed to practice law in the State of Connecticut and is a citizen of the State of Connecticut.

4. At all times relevant to this suit, Ehrsam & Kennedy ("E & K") was a general partnership, organized and existing under the laws of the State of Connect- icut, engaged in the general practice of law. Ehrsam's Testimony at 24.

5. Defendant Space Realty is a corporation organized under the laws of the State of Connecticut with a principal place of business located at 581 West Putnam Avenue, Greenwich, Connecticut.

6. Defendant John Lium, a citizen of the State of New York, is the owner of real property located at 581 Putnam Avenue, Greenwich, Connecticut (the "Property").

7. Kennedy served as Lee Vanacore's attorney from the mid–1960's to 1995.

8. From 1979 to August 1987, Kennedy was a partner in the law partnership of Caldwell, Ehrsam, Kennedy & Lavery. Beginning in September 1987, Kennedy and Frederick Ehrsam formed E & K. The partnership continued until May 1996. Ehrsam's Testimony at p. 23–4.

### B. The Note and Buy–Out

9. Vanacore formed Space Realty in 1965. Shortly thereafter, Space Realty acquired the Property.

10. In or about 1980, Vanacore entered into an agreement with Lium by which Vanacore agreed to convey to Lium all of the issued and outstanding stock of Space Realty (the "Agreement"). Kennedy represented Vanacore during this transaction.

11. In April 1980, in exchange for the shares of Space Realty, Lium paid $365,-000 in cash and signed a $950,000 note (the "Note") secured by a mortgage on the Property (the "Mortgage").

12. Under the terms of the Note, Space Realty agreed to pay Vanacore the principal amount of $950,000 with interest thereon at the rate of eight and one-half percent per annum, in equal monthly installments of $7,649.69, commencing June 1, 1980 and continuing until May 1, 1995. On May 1, 1995, the remaining balance plus accrued interest was due. The Note

the matter having been stayed in bankruptcy." Doc. # 38. On October 30, 1996, the court granted plaintiff's motion to reopen the case with respect to the non-bankrupt co-defendants. Doc. # 39.

further provided that all payments due under the Note were to be delivered to the payee at Kennedy's law office.

13. Concurrent with the Space Realty transaction, Vanacore assigned a thirty-five percent interest in the mortgage to his then (now ex-) wife, Talia Vanacore. Under the terms of the Partial Assignment of the Mortgage, Talia Vanacore agreed to accept a reduced monthly payment for the term of the Note and the Mortgage, and Lee Vanacore agreed that he would pay to her the shortfall together with interest thereon at the time that the Note was paid in full.

14. Based on these agreements, the parties began a practice whereby Space Realty would draw two checks each month to pay its obligations under the Note and Mortgage: one payable to Talia Vanacore for $2,500 and one payable to E. Stanton Kennedy, as trustee for Lee Vanacore, in the amount of $5,149.69. Kennedy would then deposit Lee Vanacore's check in an attorney trust account and draw a check payable to Lee Vanacore. There was no objection to the payees on the checks being other than Vanacore.

15. In August 1980, Vanacore moved from Connecticut to Florida.

16. In or about 1989, Vanacore failed to receive certain monthly payments due under the Note. Lium had in fact made the payments, but Kennedy had not provided the funds to Vanacore. Kennedy concealed his theft by telling Vanacore that Lium had failed to make his required payments.

17. In May 1992, Vanacore agreed to Lium's request to modify and extend the Note and Mortgage. Under the Mortgage Modification and Extension Agreement, Lee and Talia Vanacore and Lium agreed: a) that the payment of principal and interest would continue as described in the original Note and Mortgage until June 1, 1995; b) on June 1, 1995, Lium would pay the principal sum of $50,000 to Talia Vanacore which would be deducted from the

principal sum due to Lee Vanacore; and c) the payment of the remaining balance would be made by Lium to Lee Vanacore and Talia Vanacore through monthly payments with a balloon payment in May 2000.

18. On or about September 10, 1992, Lium contacted Kennedy and inquired whether Vanacore was interested in a buy-out of his interest in the Note and Mortgage for an immediate lump-sum payment of $257,191.70.

19. Kennedy communicated Lium's offer to Vanacore, who promptly and expressly rejected it.

20. Unbeknownst to Vanacore, Kennedy informed Lium that Vanacore had accepted Lium's offer. Kennedy drafted a Release and Discharge of Mortgage. He presented its signature page to Vanacore, representing to Vanacore that the signature page belonged to a document entitled "Release of Attachment." Plaintiff's Exh. # 84. Vanacore executed the signature page on October 12, 1992 and returned the document to Kennedy.

21. Kennedy attached the signature page to the purported Release and Discharge of Mortgage document and forwarded it to Lium on November 2, 1992. Lium then recorded the Release and Discharge of Mortgage on the Greenwich land records on November 16, 1992.

22. On or about November 11, 1992, Lium forwarded to Kennedy four checks, payable to Kennedy as trustee for Vanacore, totaling $257,191.70.

23. On or about November 18, 1992, Kennedy forwarded to Vanacore a check drawn on an attorney trust account in the amount of $97,843.92. Kennedy explained that the funds represented payment for Lium's supposed arrearage on the Note. He did not forward the balance of the funds he had received from Lium.

24. After November 1992, Kennedy periodically sent checks drawn on an attorney trust account to Vanacore in the

amount of $5,149.68, and described the funds as Lium's monthly mortgage payments.

25. Beginning sometime in 1991, Kennedy falsely represented to Vanacore that he had commenced a mortgage foreclosure action with respect to the Property, ostensibly as a result of Lium's supposed arrears on the Note.

26. By May 1996, Vanacore finally discovered Kennedy's fraudulent course of conduct.

## C. The 1990 Grievance against Kennedy

27. In August 1990, a former client filed a complaint against Kennedy with the Statewide Grievance Committee. The grievance disclosed that a lawsuit brought by Kennedy on behalf of the client had been dismissed for failure to file within the applicable statute of limitations. As Kennedy later admitted, he concealed that fact from his client for nearly eight years. He maintained the fiction in part by stealing, or receiving in an unauthorized manner, stationery from the Connecticut Attorney General's office and the Department of Revenue Services and then manufacturing correspondences on the stationery, which correspondence he gave to his clients as evidence of the "progress" of the "litigation."

28. Prior to the filing of the grievance, the attorney for the grievant informed Ehrsam of the nature of the complaint against Kennedy. Ehrsam's Testimony at p. 45.

29. As a result of the grievance, Kennedy was presented to the state court. In December 1990, the court appointed attorney Thomas Mangines to monitor Kennedy and to report on Kennedy's conduct to the court. Mangines remained in this position until January 1993. Ehrsam was aware of the state court proceeding and its outcome.

## D. The Action

Plaintiff has asserted six causes of action against Ehrsam and/or E & K: (1) breach of fiduciary duty against Ehrsam and E & K; (2) legal malpractice against Ehrsam and E & K; (3) a violation of Connecticut Unfair Trade Practices Act, Conn.Gen. Stat. § 42–110a *et seq.* (CUTPA) against E & K; (4) liability for wrongful acts and omissions of a partner under Conn.Gen. Stat. § 34–51 against E & K; (5) liability for misapplication of funds under Conn. Gen.Stat. § 34–52 against E & K; and (6) liability for the wrongful acts of a partner under Conn.Gen.Stat. § 34–53 against Ehrsam. Plaintiff has also sued Lium and Space Realty for reinstatement of the mortgage on the theory of unjust enrichment.

Lium and Space Realty have cross-claimed against E & K and Frederick Ehrsam. They allege that E & K is liable for Kennedy's misrepresentations about the release and discharge of the mortgage under Connecticut General Statutes §§ 34–51 and 34–52, and that Ehrsam is liable for Kennedy's conduct under Connecticut General Statutes § 34–53. The court previously granted summary judgment in favor of E & K and Ehrsam on Lium's cross claim of negligence on the part of E & K and Ehrsam in supervising Kennedy and E & K's accounts. However, the Court granted Lium's Motion to Reconsider and reserved the issue until after trial.

Lium and Space Realty have also counter-claimed against Vanacore. They argue that Vanacore is responsible for the acts of his agent, Kennedy, and that they relied to their detriment on these representations "by transferring to Mr. Kennedy $257,-191.70." Doc. # 88, p. 7.

Finally, Ehrsam and E & K have asserted a cause of action against Lium and Space Realty for unjust enrichment.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## III. CONCLUSIONS OF LAW

### A. Plaintiff's claims against Ehrsam and E & K

(1) Legal Malpractice

In his tenth cause of action, plaintiff asserts a claim of negligence against Ehrsam and E & K for failure "to exercise that degree of care and skill commensurate with that of attorneys practicing law in the State of Connecticut, including but not limited to their negligent representation and service of Vanacore, their inadequate oversight of E & K's files, and their failure to monitor Kennedy's conduct." *See* Amended Complaint, ¶ 69.

■ To state a cause of action for negligence in Connecticut, a plaintiff must show the existence of a duty, breach of that duty, causation, and actual injury. *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." *Santopietro v. City of New Haven*, 239 Conn. 207, 225, 682 A.2d 106 (1996) (internal quotation marks omitted).

■ Vanacore's negligence claim is based on professional negligence or malpractice, which is defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." *Id.* at 226, 682 A.2d 106. (citing *Barnes v. Schlein*, 192 Conn. 732, 735, 473 A.2d 1221 (1984)). *See also Haynes v. Yale—New Haven Hospital*, 243 Conn. 17, 34, 699 A.2d 964 (1997); *Edwards v. Tardif*, 240 Conn. 610, 622–23, 692 A.2d 1266 (1997). Generally, a plaintiff in a legal malpractice action must establish the standard of professional skill or care through expert testimony, *Davis v. Margolis*, 215 Conn. 408, 416 n. 6, 576 A.2d 489 (1990), and that the defendant's failure to comply with the applicable standard of care is the proximate cause of the plaintiff's loss. The "test" of proximate cause "is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 182, 646 A.2d 195 (1994) (quoting *Wu v. Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987)). *See also Ferndale Dairy, Inc. v. Geiger*, 167 Conn. 533, 538, 356 A.2d 91 (1975) (defining "substantial factor" as one which "must have continued down to the moment of the damage or, at least, down to the setting in motion of the final active injurious force which immediately produced or preceded the damage").

■ Ehrsam and E & K argue that Vanacore's negligence claim must fail because Vanacore was exclusively a client of Kennedy, and never a client of the firm. Consequently, E & K and its partners owed no duty of care to Vanacore. Unfortunately for the defendants, this characterization of the relationship, or lack of relationship, between the defendant firm and Vanacore is completely unsupported by the undisputed facts of this case.

Messrs. Ehrsam and Kennedy were a partnership, as evidenced by the fact that they filed partnership tax returns. Pl. Exhibit # 116. They held themselves out to the public as a partnership through use of firm letterhead. The firm maintained a number of "client matter cards" reflecting the various matters on which it rendered services for Vanacore and his business entities, as well as a "money card" which reflected funds received and disbursed by E & K on Vanacore's behalf. Pl. Exhibit # 1 & 2. The law firm of E & K entered an appearance on Vanacore's behalf in a lawsuit brought in 1989 by The Connecticut Bank & Trust Company, N.A. Pl. Exhibit # 8. Further, Kennedy considered Vanacore to be a client of the firm, and Vanacore similarly considered himself to be a

client of E & K. Thus, Vanacore clearly established the existence of an attorney-client relationship between him and the firm of E & K.

The existence of this relationship established a duty of professional care owed by E & K and its lawyers to Vanacore, the law firm's client. "Once the relationship is established, the attorney is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith towards him, and to inform his client promptly of any known information important to him." *Somma v. Gracey*, 15 Conn.App. 371, 544 A.2d 668, 672 (1988) (internal quotation marks and citations omitted). *See also* testimony of Ralph Elliot at 92 ("that firm and every lawyer in that firm owes the same duties that are owed by the particular lawyer in that firm who is doing the work [for the client]").

Ehrsam and E & K violated their duty of care owed to Vanacore. The allegations contained in the August 1990 Grievance, followed by the finding of the Statewide Grievance Committee and the presentment of Kennedy to state court as a result of that Grievance, did not describe acts of simple neglect or negligence on Kennedy's part. They disclosed "clearly dishonest, dissembling carry[ing] on," over a period of some eight years, constituting fraud and deception of a client. Testimony of Ralph Elliott. Trans. at 91. As plaintiff's expert witness testified, Ehrsam's knowledge of these allegations, even before a decision had been rendered by the Statewide Grievance Committee with respect to them, was more than sufficient to trigger a duty on the part of Ehrsam and E & K to take all appropriate steps to protect the interests of existing firm clients from any illicit acts by Kennedy. *Id.*

No such steps were taken. Ehrsam did not investigate whether Kennedy had engaged in misconduct with respect to any other clients; he did not review with Kennedy the matters that Kennedy was handling for other firm clients; and he did not participate in any of the meetings between Kennedy and Thomas Mangines, the court-appointed monitor.

Ehrsam was negligent in other respects. During the period from April 1991 through December 1995, Kennedy drew a total of nineteen separate checks on his secret CNB trust account to the order of "Ehrsam and Kennedy" and "Ehrsam and Kennedy, Trustee" in the total amount of $357,839.82. Pl. Exhibit # 112. Kennedy had opened this secret account in 1991 and it became the depository of funds intended for, but never received by, Vanacore, including the 1992 payment by Lium of more than $257,000 in purported discharge of the Note and Mortgage. Had Ehrsam seen any of these checks, he would have been alerted to the existence of the improper account. However, due to the lack of financial controls within the firm, Ehrsam never saw any of the checks. In addition, during the period from June 1991 through December 1995, Kennedy drew a total of seventy-one checks on the CNB account to Mary Anne Young, the firm's legal assistant. Pl. Exhibit # 113. Ehrsam never instructed Ms. Young that it was improper for the firm's attorneys to maintain separate attorney trust accounts in addition to the firm's trust account.

Ehrsam was also negligent with respect to his termination of Kennedy's periodic draw. Ehrsam decided to terminate Kennedy's periodic draw from the partnership sometime in 1993 or 1994 because he was unhappy with the amount of business that Kennedy was generating. Shortly thereafter, Kennedy informed Ehrsam that the firm's largest client, Santa Fuel, insisted on paying its bills by making payments directly to Kennedy rather than to the firm. Ehrsam did not verify this information with the client. Ehrsam did require that Kennedy periodically make payments to the firm in connection with his use of staff and other expenses relating to his work for Santa Fuel. Kennedy drew a number of these checks payable to E & K on his secret CNB account. Due to the

lack of financial controls within the firm, Ehrsam never saw these checks, which would have alerted him to the existence of Kennedy's secret account.

Finally, plaintiff has established that his losses were proximately caused by defendants' negligence. Had Ehrsam taken proper investigative steps upon learning of the grievance allegations in August 1990, he would have learned that Kennedy had already misappropriated payments intended for Vanacore and thereby prevented further thefts. For example, the firm's "money card" for Vanacore contained the following note: "After June 30, 1988 starting in July Lium sending direct [i.e. to Vanacore] per ESK." Pl. Exhibit # 2. If Ehrsam had investigated this notation—asked Vanacore if he was receiving payments directly and/or asked Lium to whom he was sending his payments on the Note—he would have discovered that Lium was regularly sending payments to Kennedy and that Vanacore had not received a series of those same payments.

(2) Breach of Fiduciary Duty

■ In his second cause of action, Vanacore asserts a claim of breach of fiduciary duty against Ehrsam and E & K. "The law is well settled in Connecticut that the relationship of attorney and client establishes a fiduciary relationship." *Dunham v. Dunham*, 204 Conn. 303, 318, 528 A.2d 1123 (1987). "The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting and confidential character, requiring a high degree of fidelity and good faith." *Matza v. Matza*, 226 Conn. 166, 184, 627 A.2d 414 (1993). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skills or expertise and is under a duty to represent the interest of the other." *Dunham*, 204 Conn. at 322, 528 A.2d 1123. Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fidu-

ciary. *Id.* Defendants Ehrsam and E & K have not met this burden.

■ E & K breached its fiduciary duties to Vanacore when one of its members misrepresented to Vanacore the nature and purpose of the document he was signing, fraudulently altered the document after obtaining Vanacore's signature and then stole Vanacore's funds. *See Prisco v. Westgate Entertainment, Inc.*, 799 F.Supp. 266, 270 (D.Conn.1992) (under Connecticut law, every partner is an agent of the partnership and knowledge of a partner regarding partnership affairs is imputed to all other partners). Ehrsam also breached his fiduciary duty to Vanacore by failing to monitor Kennedy's conduct despite knowledge of facts which should have caused him to do so and by providing inadequate oversight of E & K's files.

The court finds that Kennedy's conduct, and Ehrsam and E & K's failure to monitor him and halt that conduct, was the proximate cause of the losses suffered by Vanacore.

(3) Violation of Conn.Gen.Stat. § 34–51

■ In his seventh cause of action, Vanacore asserts that E & K violated Conn. Gen.Stat. § 34–51 which provides:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Relying principally on *Sheridan v. Desmond*, 45 Conn.App. 686, 697 A.2d 1162 (1997), the defendant firm argues that it can not be held liable for Kennedy's bad acts as his conduct fell outside of the ordinary course of the firm's business. In interpreting the "ordinary course of the business" language of § 34–51, the *Sheridan* court adopted the factors set forth in

*Kansallis Finance Ltd. v. Fern,* 421 Mass. 659, 659 N.E.2d 731 (1996). Assessing whether law partners could be held liable for the wrongful acts of one of its members, the *Kansallis* court explained that the acts "must have: (1) been the kind of thing a law partner would do; (2) occurred substantially within the authorized time and geographic limits of the partnership; and (3) been motivated at least in part by a purpose to serve the partnership." *Sheridan,* 697 A.2d at 1166 (quoting Kansallis).

Even under the *Sheridan/Kansallis* factors urged upon the court by the defendants, plaintiff has established E & K's liability under § 34–51 for Kennedy's bad acts. The evidence shows that Kennedy, in the ordinary course of serving as Vanacore's attorney and trustee, received trust funds from Lium and Space Realty in connection with the sale of Vanacore's business. Those funds were designated to be held in E & K's trust account. Instead, Kennedy misappropriated the funds he received as trustee/attorney for Vanacore.

The evidence shows that Kennedy's theft of Vanacore's funds occurred in his capacity as representative of the law firm of E & K and through the provision of legal services to Vanacore. That is, Kennedy committed his misdeeds, which led directly to plaintiff's injuries, within the ordinary course of the business of E & K. The court finds that E & K is liable to the plaintiff under Conn.Gen.Stat. § 34–51.

**(4) Violation of Conn.Gen.Stat. § 34–52.**

■ In his eighth cause of action, Vanacore alleges that E & K is liable for Kennedy's misapplication of funds received from Lium under Connecticut General Statutes § 34–52. The statute provides in part that "the partnership shall make good the loss: (a) where one partner acting within the scope of his *apparent authority* receives money or property of a third person and misapplies it; and (b) where the partnership in the course of its business receives money or property of a third person and the money or property so received

is misapplied by any partner while it is in the custody of the partnership." Conn. Gen.Stat. § 34–52 (emphasis added). Kennedy and the partnership acted as Vanacore's attorneys over an extended period of time, including in connection with the sale of Space Realty and the modification of the note and mortgage, and Kennedy also served as trustee of Vanacore's proceeds from the sale. Defendants do not allege that, at any time, Ehrsam or the firm qualified Kennedy's authority to act as a representative of the partnership. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertence, causes or allows third persons to believe his agent possesses. . . . consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. . . ." *Tomlinson v. Board of Education,* 226 Conn. 704, 734–35, 629 A.2d 333 (1993) (internal quotation marks and citations omitted.).

The evidence shows that Kennedy acted on behalf of the partnership when he received the funds from Lium in his capacity as trustee and attorney for Lee Vanacore. The defendant firm is liable under Conn. Gen.Stat. § 34–52 for Kennedy's "misapplication" of those funds.

**(5) Violation of Conn.Gen.Stat. § 34–53**

■ Section 34–53 provides that all partners are jointly and severally liable for "everything chargeable to the partnership under sections 34–51 and 34–52." As liability under this section is coextensive with liability under §§ 34–51 and 34–52, Ehrsam is liable for Kennedy's fraudulent conduct and misapplication of funds that forms the basis for E & K's liability under §§ 34–51 and 34–52.

**(6) Violation of CUTPA**

■ In his sixth cause of action, Vanacore alleges a violation of Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.* against Kennedy and E & K. To the extent that this claim survives

the dismissal of all claims against Kennedy, plaintiff fails to state a claim upon which relief can be granted. The alleged CUTPA violation against E & K is based on allegations of legal malpractice—the failure of the firm to detect and prevent Kennedy's persistent and egregious abuse of his clients. The Connecticut Supreme Court recently concluded that "professional negligence—that is malpractice—does not fall under CUTPA." *Haynes v. Yale–New Haven Hospital*, 243 Conn. 17, 34, 699 A.2d 964 (1997). More particularly, the court held that "CUTPA covers only the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyering—that is, the representation of the client in a legal capacity—should be excluded for public policy reasons." *Id.*, 35, 699 A.2d 964. The plaintiff's allegations are based on defendants' misfeasance in failing to supervise Kennedy in connection with his firm's provision of legal services to the plaintiff and do not involve the entrepreneurial or business aspects of the provision of its services. The court finds that plaintiff can not prevail on this claim.

### B. Plaintiff's claim against Lium and Space Realty for unjust enrichment

 In his eleventh cause of action, Vanacore seeks reinstatement of his mortgage interest from John Lium and Space Realty on the theory of unjust enrichment. "A right of recovery for unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." *McNeil v. Riccio*, 45 Conn.App. 466, 475, 696 A.2d 1050 (1997) (citations omitted). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich*

*Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994) (quoting *Polverari v. Peatt*, 29 Conn.App. 191, 200–201, 614 A.2d 484 (1992)).

 Plaintiff has failed to establish that the defendant did not pay, or paid an unjust price, for the benefit of the transaction. Defendant Lium offered a discounted price to the plaintiff ($257,191.70) for the benefit of a release from a principal amount of $426,877.00 owed to Vanacore. Although it was not "face" value or even present value, there is no evidence to establish that the price was so unrelated to the value of the note as to be "unjust." Lium believed that Vanacore had accepted the buy-out offer. He had no obligation to question the validity of the acceptance and no reason to suspect Kennedy's fraudulent misrepresentations. As Lium testified, he understood the buy-out as beneficial to the plaintiff in terms of providing him with short-term liquidity. Moreover, discounted prices on mortgage notes were not uncommon in the early 1990's.

Therefore, the court finds that Lium was an unintended beneficiary of Kennedy's fraudulent conduct, conduct which later included a failure to turn over most of the buy-out proceeds to Vanacore. Vanacore's attorney, ostensibly acting at Vanacore's request, accepted an offer made by Lium. In this unfortunate respect, the deal represents a grave injustice to Vanacore. However, Lium did not fail to pay, or pay unjustly, for the offer he made to Vanacore. The fact that the acceptance of his offer was not authorized by Vanacore, and represented a considerably lower price than Vanacore would have accepted, does not render the offered price "unjust."

### C. Lium and Space Realty's counterclaim against Vanacore

 Lium and Space Realty argue that, "by transferring to Mr. Kennedy $257,191.70," they relied to their detriment on Kennedy's assurances that the release and discharge of the Mortgage was prop-

erly executed. Doc. # 88, p. 7. They further argue that Vanacore should be held responsible for those assurances since Kennedy acted as Vanacore's agent in the transaction.

In *O'Sullivan v. Bergenty*, 214 Conn. 641, 648, 573 A.2d 729 (1990), the Connecticut Supreme Court explained

> under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and *the other party must change its position in reliance on those facts, thereby incurring some injury.*

(emphasis added) (citations omitted). Counter-claimants fail to demonstrate injury as a result of Kennedy's misrepresentations. Lium made a buy-out offer which Kennedy accepted, purportedly on behalf of Vanacore. In exchange for the agreed-upon funds, Lium received what Kennedy improperly promised and Lium desired: the release and discharge of the Mortgage. Thus, Lium received that which he bargained for and suffered no injury as a result of the fraud which Kennedy perpetrated on his client.

Counter claimants assert they are entitled to recover the cost of defending against the instant action because it is a damage they suffered as a result of their detrimental reliance on Kennedy's misrepresentations. This claim fails. Lium did rely on the validity of the Release of Mortgage when he paid money to Kennedy as apparent agent for Vanacore. However, he received what he bargained for—a release of the mortgage. Had the court ruled differently on Count II (unjust enrichment against Lium and Space Realty) and reinstated the mortgage, Lium and Space Realty would have suffered damages as a result of their reliance on Kennedy. However, they have not been so injured. *Kimberly–Clark Corp. v. Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987).

Moreover, to hold they are entitled to their attorney's fees because they were required to defend Vanacore's claims would vitiate the "American rule" that "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Marsh, Day, & Calhoun v. Solomon*, 204 Conn. 639, 652–3, 529 A.2d 702 (1987). Counter claimants claim no such statutory or contractual right. Accordingly, they have no right to recover their litigation expenses from the plaintiff.

### D. Lium and Space Realty's cross claims against Ehrsam and E & K

In counts one and two of their cross claim, Lium and Space Realty allege that E & K is liable for Kennedy's misrepresentations about the release and discharge of the mortgage under Connecticut General Statutes §§ 34–51 and 34–52, and that Ehrsam is liable under § 34–53.[2]

E & K is not liable to Lium and Space Realty for Kennedy's bad acts under § 34–51 or for the misapplication of funds, owed by Lium to Vanacore, under § 34–52. Lium delivered his funds to Kennedy, Vanacore's trustee, in order to satisfy his obligations to Vanacore under the Note. In return for the funds, Lium and Space Realty received the discharge of the Mortgage. For this reason, Lium and Space Realty can not demonstrate a "loss or injury," as required under § 34–51, from Kennedy's subsequent bad acts with respect to the funds paid by Lium. Relatedly, Lium and Space Realty can not demonstrate a misapplication of their funds under § 34–52. Once in Kennedy's

---

**2.** Section 34–53 provides that all partners are jointly and severally liable for "everything chargeable to the partnership under sections 34–51 and 34–52." As liability under this section is coextensive with liability under sections 34–51 and 34–52, it need not be addressed by separate analysis.

custody, the funds were the property of Vanacore subject only to the delivery of the release. Kennedy delivered the release before any "misapplication," at which point Lium had no right or claim to the funds. In short, Kennedy's subsequent theft of those payments was an egregious "misapplication" of *Vanacore's* funds.

In count three of the their cross claim, Lium and Space Realty allege that Ehrsam and E & K "failed to properly supervise and monitor Mr. Kennedy and the firm's accounts" and that this negligence resulted in harm to Lium and Space Realty. Doc. # 109, p. 11–12. In an earlier Ruling, the court granted summary judgment in favor of Ehrsam and E & K on this count. The court then granted cross-claim plaintiff's motion for reconsideration and reserved decision. (Doc. # 120).

For the reasons stated in the Ruling on the summary judgment motion, Ehrsam and E & K did not owe a duty of care to Lium and Space Realty. Moreover, for the reasons stated in the discussion of counts one and two of the cross claim, Lium and Space Realty fail to establish that they have been injured by Ehrsam and E & K's inadequate monitoring or supervision of Kennedy.

### E. Ehrsam and E & K's unjust enrichment cross claim against Lium and Space Realty

█ E & K and Ehrsam suggest that, if they are held liable for Kennedy's fraud with respect to the buy-out of the Note, they should recover from Lium and Space Realty on a theory of unjust enrichment. As the Court has already found,

Lium and Space Realty paid for and received the benefits to which they were entitled under the buy-out agreement.

E & K and Ehrsam's unjust enrichment theory is still more flawed. Their liability in this action stems from their responsibility for Kennedy's bad acts. The court refuses to apply unjust enrichment to protect a party from the consequences of its bad acts, even when a third-party has received some benefit in the process. E & K and Ehrsam do not cite to a single Connecticut authority which holds to the contrary, and the court has found none.

### IV. DAMAGES

Upon a finding of legal malpractice, breach of fiduciary duty, and violations of Conn.Gen.Stat. §§ 34–51, 34–52 and 34–53, set forth above, Vanacore is entitled to recover compensatory damages from defendants Ehrsam and E & K. Based on undisputed evidence (see Pl. Exhibits 125 and 125a), and plaintiff's Supplemental Memorandum of Law Regarding Interest Calculation, the court finds that Vanacore has suffered damages as follows.

With respect to the counts for legal malpractice and breach of fiduciary duty, the plaintiff is awarded damages in the amount of $463,172.41. With respect to the counts brought pursuant to Connecticut General Statutes §§ 34–51, 52 and 53, the plaintiff is awarded $519,818.41.[3]

### V. CONCLUSION

For the foregoing reasons, the court ORDERS that:

(1) The clerk is instructed to enter judgment in the amount of $463,172.41 in favor

---

**3.** As of September 1, 1998, the arrearage of monthly payments was $137,050. The interest accrued on the arrearage through September 18, 1998 was $38,854. The principal balance of the loan as of September 1998 (assuming the loan had been kept current) was $343,914.41. Under the terms of the agreement, Vanacore was entitled to the sum of these three amounts: $519,818.41. However, eleven of the monthly payments that Vana-

core did not receive were stolen by Kennedy prior to September 1990, the point at which Ehrsam and E & K had actual or constructive knowledge of Kennedy's bad acts. Thus, as plaintiff concedes, Ehrsam and E & K should not be held accountable for this portion of the damage caused by Kennedy on the negligence counts. Accordingly, the court subtracted $56,646 (11 × $5,149.68) from $519,818.41 to arrive at $463,172.41.

of the plaintiff on his claims of breach of fiduciary duty (Count Two) and legal malpractice (Count Ten) against defendants Ehrsam and E & K. Judgment shall enter in favor of the plaintiff on his claims against E & K for violations of Conn.Gen. Stat. §§ 34–51 and 34–52 (Counts Seven and Eight respectively), on his claim against defendant Ehrsam for violation of Conn.Gen.Stat. §§ 34–53, each in the amount of $519,818.41. These amounts are not cumulative and the total judgment award is $519,818.41.

(2) The clerk is instructed to enter judgment in favor of defendants Ehrsam and E & K on plaintiff's CUTPA claim (Count Six).

(3) The clerk is instructed to enter judgment in favor of defendants Lium and Space Realty on plaintiff's claim for unjust enrichment (Count Eleven).

(4) The clerk shall enter judgment for the plaintiff on Lium and Space Realty's counter-claim of detrimental reliance. Doc. # 88.

(5) The clerk shall enter judgment in favor of cross-claim defendants Ehrsam and E & K on cross-claim plaintiffs Lium and Space Realty's negligence cross-claim (Count Three) and cross-claims of violations of Conn.Gen.Stat. §§ 34–51, 34–52, and 34–53 (Counts One and Two respectively). Doc. # 88.

(6) The clerk shall enter judgment in favor of Lium and Space Realty on Ehrsam and E & K's cross-claim of unjust enrichment. Doc. # 31.

SO ORDERED.